No. 15,741.

SMALLEY *v.* THE PEOPLE.

(183 P. [2d] 558)

Decided June 30, 1947.

Mr. JOEL E. STONE, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

Mr. Chief Justice Burke delivered the opinion of the court.

Plaintiff in error, hereinafter referred to as defendant, was convicted of burglary and possession of burglary tools. To review a judgment, pronounced November 17, 1945, sentencing him to ten to thirty years in the penitentiary he prosecutes this writ. The only alleged errors assigned and argued are the insufficiency of the evidence, and the admission of People's Exhibits A, B, C and D, the burglary tools.

Defendant was jointly charged with one Bentley for burglarizing the office of Dr. Isaacson to whom they were personally known and whose patients they had been. Bentley, also convicted, seeks no review, instead, we are told, sought probation. This perhaps because the record disclosed his previous good reputation.

The people's witness Morrison roomed in an apartment over the doctor's office and owned and operated a drug store adjoining it. Hearing a noise late at night in the office below he says he went to the window "and saw two men walking out of the doctor's office * * *. I called the police * * *. I watched and saw them come back in about ten minutes and walk right in the front door. The officers arrived in two or three minutes so I went down to the door and told them the men were in the office." One window "had been jimmied" and another "pried and the lock broken." The police found defendant and Bentley in the unlighted office and arrested them. Exhibit B, a pair of black gloves, and Exhibit D, a tire iron, were found there, both unknown to the doctor. D fitted the marks on the broken window. Bentley had been driving a laundry truck which he borrowed under false pretenses and did not return. It was found two blocks from the office and Exhibit A, a "jack hammer" and C, a "punch" were in it. Of these the truck owner knew

nothing. Defendant and Bentley told the police they were riding around together in the truck. Defendant did not take the stand but Bentley did. He testified he had known defendant for five years; that they were driving around in the truck delivering hand bills; that they drank whiskey together; that he got sick, saw the doctor's office and went in with defendant for the purpose of treatment and within a few minutes they were arrested. He further stated that as they approached the office they saw two people, one apparently a woman, coming out. He denied all knowledge of the exhibits. When further questioned by the officers he declined to answer and defendant refused all explanation. Morrison, testifying for the people on the trial, was unable to positively identify defendant and Bentley as the men he had seen leaving the office, he could only say they "looked like them."

■ ■ Counsel for defendant, in support of his specification of insufficient evidence, admitting the burglary by the use of the tire iron, maintains there was no identification of defendant and Bentley as the perpetrators since Morrison, the only man who could have done so, failed therein. He insists that the two people whom defendant and Bentley said they saw leaving the office as they approached were the perpetrators and the persons seen by Morrison. This theory fails to explain why these men were caught in the dark office, the exhibits in their truck, and the further fact that although there was ample parking space directly in front of the office their truck was parked two blocks distant. Furthermore, Morrison, who looked out of the window directly down on the persons departing, testified they were two men, not a woman and a man as Bentley says. Again, although Morrison failed at the trial to positively identify defendant and Bentley, he did say that the men who went out of the office came back and the men who did come back were the men whom the police seized in the dark office. It thus appears that there was ample evidence to support

the verdict and the entire question was one for the jurors. If, as they concluded, defendant and Bentley perpetrated the burglary, there was no doubt of the propriety of the admission of the exhibits. These were, in fact, admissible under the burglary charge. That being established the exhibits, not intrinsically and exclusively burglary tools, but capable of use for that purpose, were admissible as such in support of the charge of possession.

Were the foregoing the entire record before us affirmance would inevitably follow; but we are here confronted with patent errors disclosed by the record of which, notwithstanding the absence of assignment or argument, we are obliged, under previous rulings of this court, to take notice.

This information contained three additional counts; the first of which charged that defendant was convicted in Colorado of burglary and larceny, November 29, 1932, and sentenced to the state reformatory; the second that on November 25, 1933 he was convicted in Colorado of grand larceny and sentenced to the state reformatory; the third that on April 15, 1936 he was convicted in Colorado of burglary and larceny and sentenced to the penitentiary. (Term not stated). These charges were quite evidently included for the purpose of having defendant sentenced, if convicted on the burglary charge in the instant case, as an habitual criminal. When called upon to plead, his counsel waived the reading of the information and entered a general plea of not guilty, specifying no particular count of the information, and added, "But said defendant by his attorney admits his identity as having been previously convicted." How many times convicted he did not say. We have then charges of three previous felony convictions, this admission of identity to at least one of them, and a general plea of not guilty. The prescribed sentence for burglary is one to ten years. '35 C.S.A., vol. 2, p. 985, c. 48, §82. That for possession of burglary tools is not to exceed two

years. id., p. 1057, §283. Sentence as an habitual criminal, for one convicted of a felony and shown to have been theretofore twice so convicted, is from the longest term to three times the longest term "prescribed upon a first conviction." Where three such prior convictions are charged and established, sentence of imprisonment for life is mandatory. S.L. '45, p. 310, c. 114, '45 Cum. Supp., '35 C.S.A., c. 48, §§555 (1)-555 (3). Section 2 of the foregoing provides that a "duly authenticated copy of the record of former convictions and judgments * * * shall be prima facie evidence of such convictions." Section 3 thereof requires the jury to make a finding on such charges "unless the defendant admits the previous convictions." In the instant case no evidence of these prior convictions was presented, they were not mentioned in the indictments, no verdicts were returned thereon, and no specific count or counts was referred to in the sentence of the court.

Thus it is apparent from the record that the court, as well as counsel for the people and the defendant, assumed at all times that the charges of former convictions were sufficient to support a sentence as an habitual criminal; that notwithstanding the general plea of not guilty, apparently entered to all counts, the admission of identity as to some was equivalent to a plea of guilty as to all and that the sentence pronounced, by its silence as to specific charges, was a valid sentence of defendant as an habitual criminal. We are not prepared to so hold. Moreover, we are unable to square the sentence of ten to thirty years with the statute, unless it was imposed on the theory of the existence of the law as it stood prior to the amendment of 1945, which was approved April 9 of that year, whereas this information was filed some three weeks later. If defendant's admission of identity could be properly considered as a plea of guilty to one charge of former conviction it was a plea of guilty as to all three, in which case a sentence of life imprisonment was imperative.

Doubtless a similar record, where these questions had never been raised by a defendant who had not sought review, or who had obtained a review without assignment thereof and without success, would support a ruling that by his acquiescence he had concurred in the holding that his admission of identity was intended and tendered as a plea of guilty to the charges of former conviction. But where the judgment has not become final, where the writ is before us, where the defect in the record is glaring, and where the possible excess in the penalty is three fold, we feel in duty bound to notice errors so potent, though unassigned and unargued.

We have no quarrel with this salutory statute in re habitual criminals; we would neither weaken it by construction nor emasculate it by carping criticism of procedure. Moreover, assuming all the emphatic implications of this record, we entertain no doubt about defendant having in fact brought down upon himself the severe penalty it provides for the safety of society. But we cannot close our eyes to the fact that this statute is drastically in derogation of the common law and hence by ancient and applicable rule must be strictly construed. It is no light thing to double and treble the maximum sentence of the criminal law, to say nothing of relegating the malefactor to a life of penal servitude for having four times stolen articles of the value of $20. All which, buttressed by our former decisions, obliges us to insist upon a strict compliance with this habitual criminal statute. *O'Day v. People*, 114 Colo. 373, 166 P. (2d) 789.

Since here it is too late to amend charge or plea, or take additional evidence, the judgment is reversed and the cause remanded with instructions to re-sentence the defendant, limiting that sentence to the two offenses, specifically covered by the verdicts and stating whether those run concurrently or consecutively.

MR. JUSTICE JACKSON and MR. JUSTICE STONE dissent

in so far as the opinion supports the conviction under .said section 283, chapter 48; '35 C.S.A.

Mr. Justice Luxford not participating.