**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

**v.**

**Robert CHAVEZ, Defendant-Appellant.**

**No. 79SA358.**

Supreme Court of Colorado.

Jan. 5, 1981.

Rehearing Denied Jan. 26, 1981.

---

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Kathleen M. Bowers, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Shelley Gilman, Deputy State Public Defender, Denver, for defendant-appellant.

DUBOFSKY, Justice.

The defendant, Robert Chavez, appeals his jury conviction for first-degree criminal trespass, section 18–4–502, C.R.S.1973 (now in 1978 Repl.Vol. 8), and conspiracy to commit second-degree burglary, section 18–2–201, C.R.S.1973 (1978 Repl.Vol. 8). The defendant was also charged with second-de-

gree burglary, section 18–4–203, C.R.S.1973 (1978 Repl.Vol. 8), and with four counts of habitual criminality, section 16–13–101, C.R.S.1973 (1978 Repl.Vol. 8). The jury acquitted him on the second-degree burglary charge, and the trial court granted a motion for judgment of acquittal on the habitual criminal charges. We reverse the convictions for first-degree criminal trespass and conspiracy to commit second-degree burglary.

At the close of the prosecution's case on the substantive charges, the defendant moved to exclude any testimony he might give in defense of the substantive charges from the habitual criminal proceedings. The trial court ruled that impeachment evidence of the defendant's prior convictions elicited or offered by the prosecution during the trial of the substantive offense could be used for substantive purposes in the habitual criminal trial. On appeal the defendant argues that the trial court's denial of his motion unconstitutionally burdened his right to take the witness stand in his own defense.[1] We agree.

The defendant chose not to testify and was acquitted of the habitual criminal charges; however, he was convicted, without testifying, of first-degree criminal trespass and conspiracy to commit second-degree burglary. Had he chosen to testify in his own defense on the trespass and burglary charges, he understood that an admission of the prior convictions charged in the habitual criminal counts would, upon conviction of the substantive crime, lead to automatic imposition of a life sentence under the habitual criminal statute.[2]

It is useful to review the habitual criminal statute, particularly section 16–13–103, C.R.S.1973 (1978 Repl.Vol. 8), to understand the defendant's constitutional claim.

"(4) If the defendant denies that he has been previously convicted as alleged in [the habitual criminal counts] . . . the jury impaneled to try the substantive offense shall determine by separate verdict whether the defendant has been convicted as alleged. The procedure in any case *in which the defendant does not become a witness in his own behalf* upon the trial of the substantive offense shall be as follows:

(a) The jury shall return a verdict upon the issue of guilt or innocence;

(b) If the verdict is that the defendant is guilty of a felony, then the same jury shall forthwith proceed to try the issues as to whether the defendant has been previously convicted as charged. The prosecuting attorney has the burden of proving beyond a reasonable doubt that the defendant has been convicted as charged.[3]

(5) If upon the trial of the issues upon the substantive offense, *the defendant takes the witness stand in his own defense* and *denies* that he has been previously convicted as alleged, the defendant, and the prosecuting attorney on rebuttal, shall present all evidence relevant to the issues of previous convictions, and the jury shall return verdicts on all issues relating to previous convictions if the defendant is found guilty of the substantive offense." [Emphasis added.]

The statute does not explicitly delineate the procedures to be followed at trial if the defendant takes the witness stand and *admits* that he has been convicted previously as alleged. However, subsections (1) and (3) appear to obviate the necessity of proving the previous convictions alleged in the habitual criminal counts if the defendant admits them during his testimony on the substantive charges:

---

1. The defendant also alleges that his conspiracy conviction was based upon insufficient evidence and was inconsistent with acquittal of second-degree burglary. We need not reach these contentions.

2. Section 16–13–101(2), C.R.S.1973 (1978 Repl. Vol. 8).

3. Bifurcation avoids prejudice to the defendant in the initial determination of the issue of guilt by keeping from the jury the defendant's propensity to commit crimes. *People v. Lucero*, Colo., 615 P.2d 660 (1980); *see People v. Fullerton*, 186 Colo. 97, 525 P.2d 1166 (1974).

"(1) If the fact of previous convictions of other offenses is included in an indictment or information, the jury, if it finds a verdict of guilty of the offense with which he is charged, *unless the defendant admits the previous convictions*, shall also find whether or not he has suffered such previous convictions.

  *   *   *   *   *   *

(3) Upon arraignment of the defendant he shall be required to admit or deny that he has been previously convicted of the crimes identified in the [habitual criminal charges]. . . . If the defendant stands mute it shall be treated as a denial by him that he has been convicted as alleged. If the defendant admits that he has been convicted as alleged in any one or more of the counts charging previous convictions, no proof thereof is required, and upon conviction of the substantive offense, the court shall pass sentence upon the defendant as an habitual criminal."

Moreover, we have said that if the defendant chooses to admit his prior felony convictions in the trial on the substantive charges, "his opponent is relieved of the necessity for proving any fact so admitted" in connection with habitual criminal counts. *Hackett v. Tinsley*, 143 Colo. 203, 352 P.2d 799, *cert. denied*, 364 U.S. 874, 81 S.Ct. 118, 5 L.Ed.2d 96 (1960).[4]

If the defendant wishes to testify on the substantive charges, he must anticipate cross-examination about his prior criminal record.[5] This prospect confronts him with a dilemma. On cross-examination, he may deny his prior felony convictions and face submission to the jury in the trial on the substantive charge of all evidence relevant to the issues of previous convictions, section 16–13–103(5), or he may admit his prior criminal record and, by testifying to mat-

ters which he believes will disprove the substantive charges against him, attempt to avoid the mandatory life sentence to which his admission and a conviction of the substantive offense would otherwise lead. [A defendant cannot be sentenced as an habitual criminal until he is convicted of the underlying substantive charge, section 16–13–103(4)(b).]

█ An accused in a state criminal trial has a Fourteenth Amendment due process right to testify in his own behalf. *Faretta v. California*, 422 U.S. 806, 819 n.15, 95 S.Ct. 2525, 2533 n.15, 45 L.Ed.2d 562 (1975). A defendant also has a constitutional due process right to proof by the prosecution of all elements of the crime charged against him. *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *People v. Hill*, 182 Colo. 253, 512 P.2d 257 (1973). The defendant facing habitual criminal charges is forced to choose between his constitutional right to testify in his own defense and his constitutional right to have the State prove the elements of habitual criminality. If he chooses to testify about his past record, the prosecution is relieved of its burden of proving the elements of habitual criminality.[6] The statutory procedure here suffers from the same flaw the United States Supreme Court condemned in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968): it creates an intolerable tension between two constitutional rights. *See also People v. Coleman*, 13 Cal.3d 867, 533 P.2d 1024, 120 Cal.Rptr. 384 (1975); *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971); *People v. Rosenthal*, Colo., 617 P.2d 551 (1980).

As a remedy for this constitutional dilemma, the defendant argued to the trial court,

---

4. *Hackett* was decided under the "Little Habitual Criminal Act," section 39–13–1, C.R.S.1953. We over-rule all language in *Hackett* which is inconsistent with this opinion.

5. Section 13–90–101, C.R.S.1973; *People v. Layton*, Colo., 612 P.2d 83 (1980); *People v. Griffith*, 197 Colo. 544, 595 P.2d 231 (1979); *People v. Thompson*, 197 Colo. 299, 592 P.2d 803 (1979).

6. Our statutory scheme discourages a defendant from testifying. Promotion of truthful testimony in a judicial proceeding serves "the imperative of judicial integrity." *See Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); *Terry v. Ohio*, 392 U.S. 1, 12, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889 (1967).

first, that he was entitled to a bifurcated proceeding on the habitual criminal counts notwithstanding a decision to testify in his own behalf at his trial on the substantive offenses and, second, that any evidence of prior convictions elicited from him during the first stage of the trial should be excluded from the subsequent habitual criminal proceedings. The trial court ruled that it would conduct bifurcated proceedings whether or not the defendant took the witness stand, but held that the district attorney was entitled to impeach the defendant's testimony by eliciting or introducing evidence of his prior felony convictions and that the jury could consider this prior conviction evidence for substantive purposes in its deliberations on the habitual criminal charges.

The trial judge recognized that the statute and case law construing it[7] dispense with a bifurcated proceeding if the defendant chooses to testify; however, the judge ruled that the existence of habitual criminal charges were to be kept from the jury until it reached a verdict on the substantive counts.[8] Once the jury returned a verdict of guilty, the trial court would submit the habitual criminal counts to the jury in what the court characterized "a bifurcated proceeding." By withholding the habitual criminal counts from the jury until it had reached a verdict on the substantive charges, the trial court presumably meant to dispel the prejudicial effect foreknowledge of those counts might otherwise exert on the jury's deliberations.[9] The trial court did not specify the steps to be followed in the habitual criminal proceeding other than stating that prior conviction evidence could be considered by the jury for substantive purposes in its deliberations on the habitual criminal counts.

■■■■ Because the Habitual Criminal statute fails to explicitly delineate the procedures trial courts are to adopt if a defendant chooses to testify in connection with the substantive charges against him and admit his prior convictions, it was not inappropriate for the trial court to "bifurcate" the proceedings in this case.[10] However, the court's ruling failed to cure the fundamental defect in the statutory scheme. As we have noted above, that infirmity is not the prejudice to a defendant which ordinarily accompanies evidence that he has committed other crimes. Cf. *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959); *People v. Honey*, Colo., 596 P.2d 751 (1979).[11] The law is settled that, notwithstanding its inherent prejudiciality, evidence of prior criminal convictions may properly be admitted to impeach the credibility of a defendant's testimony. *See* section 13–90–101, C.R.S.1973. Rather, the basic defect in the Habitual Criminal statute is the intolerable tension it creates between a defendant's twin constitutional rights to testify in his own defense and to have the prosecution prove each element of the several counts with which he is charged. The impeachment use of an admission of prior convictions elicited from a defendant who chooses to testify is permissible. However, the substantive use of that same evidence to relieve the prosecution of its statutory and

---

7. *People v. Trujillo*, 40 Colo.App. 220, 577 P.2d 297 (1977); *Mitchell v. People*, 137 Colo. 5, 320 P.2d 342 (1958); *Wolff v. People*, 123 Colo. 487, 230 P.2d 581 (1951); *Routa v. People*, 117 Colo. 564, 192 P.2d 436 (1948).

8. Defense counsel recommended and the court adopted a procedure suggested by the dissenting opinion in *Routa v. People, supra.*

9. Of course, the defendant would not be insulated from the prejudice attributable either to his testimonial admission of prior convictions or to other evidence of prior convictions adduced by the prosecution to impeach his testimony.

10. To the extent they are inconsistent with this opinion, we over-rule *People v. Trujillo, supra; Mitchell v. People, supra; Wolff v. People, supra; Routa v. People, supra.*

11. Under section 16–13–103(5), introduction of such evidence and a unitary trial are mandatory if a defendant takes the stand and denies that he was previously convicted as charged. Here the trial court apparently believed there was an additional, unacceptable risk that the jury's deliberations on the substantive charges would be unduly swayed by instructing them that the defendant had also been charged as an habitual criminal. *See People v. Lucero, supra.*

constitutional burden of proving the elements of a separate status, habitual criminality, by introducing evidence independent of the defendant's testimony such as duly authenticated records of a defendant's prior convictions,[12] impermissibly burdens the exercise of a defendant's right to testify in his own behalf. This tension can only be alleviated by compelling the prosecution to shoulder the burden of proving those convictions, either in the manner specified by the statute or by independent evidence, irrespective of the evidence elicited from a defendant who chooses to answer the substantive charges against him by testifying in his own behalf.[13]

■ The trial court's ruling that evidence of the defendant's prior convictions elicited during his trial on the substantive charges, would be admissible for substantive purposes in the habitual criminal proceeding was an error which its "bifurcation" of the jury's deliberations failed to remedy. Instead, when the defendant expressed a desire to testify on his own behalf and requested a bifurcated proceeding, the trial court should have ruled that it would (1) instruct the jury to consider any admissions of prior convictions elicited from the defendant in connection with his testimony on the substantive offense *only* as they affect his credibility, *Diaz v. People*, 161 Colo. 172, 420 P.2d 824 (1966), and (2) that the prosecution must meet its burden of proving beyond a reasonable doubt the defendant's prior convictions by evidence independent of the defendant's testimony or duly authenticated records of those convictions. *O'Day v. People*, 114 Colo. 373, 166 P.2d 789 (1946).

Because the trial court's ruling impermissibly burdened the defendant's right to testify in his own defense by relieving the prosecution of the burden of proving the charges against him beyond a reasonable doubt, the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

QUINN, J., concurs and specially concurs.

ERICKSON, J., concurs and joins in special concurrence.

HODGES, C. J., dissents, and LEE and ROVIRA, JJ., join in dissent.

LEE, J., dissents, and HODGES, C. J., and ROVIRA, J., join in dissent.

QUINN, Justice, concurring and specially concurring:

I concur in the well-reasoned opinion of the court written by Justice Dubofsky. That opinion is based on sound and long-established judicial precedent. It applies that precedent in a manner that accords the defendant his constitutional due and responsibly salvages the habitual criminal statute from what otherwise would have been an irreparable constitutional infirmity.

A charge of habitual criminality is *sui generis.* The legislature recognized the unique nature of this status by establishing strict statutory procedures for its determination, including proof of the prior convictions beyond a reasonable doubt. Section 16–13–103(4)(b), C.R.S.1973 (1978 Repl. Vol. 8). With good reason this court consistently has construed these statutory procedures strictly in favor of the accused. *See, e. g., People v. Lucero*, Colo., 615 P.2d 660 (1980); *Vigil v. People*, 196 Colo. 522, 587 P.2d 1196 (1978); *DeGesualdo v. People*, 147 Colo. 426, 364 P.2d.374 (1961); *Smalley v. People*, 116 Colo. 598, 183 P.2d 558 (1947). Short of a conviction for a capital offense, no more serious adjudication can befall an accused in our criminal justice system. In contrast to the Federal Dangerous Special Offender Act, 18 U.S.C. § 3575, which incorporates a principle of proportionality and allows sentencing discretion, *see Rummel v. Estelle*, 445 U.S. 263, 299–30 and n.20, 100 S.Ct. 1133, 1152–53 and n.20, 63 L.Ed.2d 382, 407 and n.20 (1980) (Powell, J., dissenting), a

12. Sections 16–13–102 and 16–13–103(4)(b).

13. It is well settled that whenever possible a statute should be construed to reduce constitu-

tional infirmities. Section 2–4–201(1)(a), C.R.S.1973; *People v. Washburn*, 197 Colo. 419, 593 P.2d 962 (1979).

person adjudged a habitual criminal under section 16–13–101(2), C.R.S.1973 (1979 Supp.) "shall be punished by imprisonment in a correctional facility for the term of his or her natural life."

## I.

That the majority holding is consistent with the doctrine of unconstitutional conditions cannot be questioned. In *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the United States Supreme Court found reversible constitutional error in a California constitutional provision authorizing the court to instruct jurors that they may draw unfavorable inferences from a defendant's failure to explain or deny matters within his knowledge. The court said of such procedure: "It is a penalty imposed by the courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." 380 U.S. at 614, 85 S.Ct. at 1232–33, 14 L.Ed.2d at 109–110. In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that a defendant's suppression testimony may not be admitted against him at trial as evidence of guilt because to do so would deter the defendant "from presenting the testimonial proof . . . necessary to assert a Fourth Amendment claim." 390 U.S. at 392–93, 88 S.Ct. at 975, 19 L.Ed.2d at 1258. Under these circumstances the court found it "intolerable that one constitutional right should have to be surrendered in order to assert another." 390 U.S. at 394, 88 S.Ct. at 976, 19 L.Ed.2d at 1259. Again this principle was applied in *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). There, the Supreme Court found the death penalty provision of the Federal Kidnapping Act unconstitutional because it needlessly chilled the exercise of the defendant's basic constitutional right to a jury trial:

"The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive. In this case the answer to that question is clear.

\*    \*    \*    \*    \*    \*

"Whatever the power of Congress to impose a death penalty for violation of the Federal Kidnapping Act, Congress cannot impose such a penalty in a manner that needlessly penalizes the assertion of a constitutional right.

\*    \*    \*    \*    \*    \*

"A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right." 390 U.S. at 582–83, 88 S.Ct. at 1216–17, 20 L.Ed.2d at 147–48.

It is also an axiom no longer debatable that an accused has the constitutional right to require the state to prove his guilt beyond a reasonable doubt on every essential element of a criminal charge. *E. g., In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *accord, Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Smith v. Smith*, 454 F.2d 572 (5th Cir. 1971); *cert. denied*, 409 U.S. 885, 93 S.Ct. 99, 34 L.Ed.2d 141 (1972); *Stump v. Bennett*, 398 F.2d 111 (8th Cir. 1968); *cert. denied*, 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968). In fact, this court in *People v. District Court*, 165 Colo. 253, 439 P.2d 741 (1968), had no difficulty in concluding that a statutory provision relieving the prosecution of that burden was constitutionally flawed under state due process doctrine. Implicit in the concept of due process is the fundamental principle that the state must prove to the satisfaction of the jury beyond a reasonable doubt all the material elements necessary to constitute the offense charged. *People v. District Court, supra; Leonard v. People*, 149 Colo. 360, 369 P.2d 54 (1962); *Kent v. People*, 8 Colo. 563, 9 P. 852 (1885). A statutory scheme relieving the state of that burden would collide headon with Article II, Section 25, of the Colorado Constitution. *People v. District Court, supra.*

Nor can anyone seriously question the constitutional right of an accused in a criminal case to testify in his own defense. The United States Supreme Court in *Brooks v.*

*Tennessee,* 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358, 364 (1972), noted that "[w]hether the defendant is to testify is an important tactical decision as well as a matter of constitutional right." *See also, e. g., Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The Second Circuit Court of Appeals characterized this right "as having an importance similar to the right to be present at one's trial and to present a defense." *United States v. Bentvena,* 319 F.2d 916, 943 (2d Cir. 1963), *cert. denied sub nom. Ormento v. United States,* 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). This right is so inherently personal and fundamental that it can be waived only by the defendant and not his attorney. *Winters v. Cook,* 489 F.2d 174 (5th Cir. 1973). No defendant should "be deprived of exercising that right and conveying his version of the facts to the court or jury . . . ." *Hughes v. State,* 513 P.2d 1115, 1119 (Alaska 1973); *accord, State v. Noble,* 109 Ariz. 539, 514 P.2d 460 (1973); *People v. Robles,* 2 Cal.3d 205, 466 P.2d 710, 85 Cal.Rptr. 166 (1970). In short, the right to testify in one's own defense cannot be eroded or needlessly chilled without running afoul of the Due Process Clause of the United States and Colorado Constitutions. *U.S. Const.* Amend. XIV; *Colo.Const.* Art. II, Sec. 25.

In this case the defendant was put to a Hobson's choice. He could decline to testify and thereby relinquish his constitutional right to convey his version of the facts to the jury, or he could take the stand and thereby forego his constitutional right to require the state to prove his habitual criminality. A defendant in a criminal case is entitled to all his constitutional rights. "[H]e cannot be forced to barter one for the other. When the exercise of one right is made contingent upon the forbearance of another, both rights are corrupted." *United States ex rel. Wilcox v. Johnson,* 555 F.2d 115, 120 (3d Cir. 1977).

The dissenting opinions notwithstanding, the plain and simple fact is that the unrestricted prosecutorial use of a defendant's testimonial admission of prior convictions— the impeachment use on the principal charge and the substantive use on the charge of habitual criminality—would needlessly penalize the defendant for asserting his constitutional right to testify in his own defense on the principal charge. The construction of the habitual criminal statute formulated by Justice Dubofsky is absolutely essential to the constitutional viability of that statutory scheme.

II.

I also agree with the majority that "it was not inappropriate for the trial court to 'bifurcate' the proceedings in this case." However, I would go a step further. Because of the innuendo of depravity that is implicit in the charge of habitual criminality, all trials involving that status determination should be bifurcated, whether the defendant elects to testify on the principal charge or not. Only if and when the jury finds the defendant guilty of the principal charge should the jury be advised of and hear evidence on the separate counts of habitual criminality. It is my belief that "[t]he statutory procedures mandate a bifurcated trial . . . precisely to obviate the prejudicial effect of prior convictions on the trial of the substantive offense." *People v. Lucero,* Colo., 615 P.2d 660, 666 (1980).

Although admittedly the defendant's prior felony convictions will be admitted for impeachment purposes when he testifies in defense of the principal charge, the jury nevertheless will be clearly instructed at that point that this evidence should be considered by them for the purpose of evaluating the defendant's credibility as a witness and for no other purpose. It is quite another matter, however, to inform the jury, prior to the resolution of the principal charge, that upon his conviction of that charge the defendant stands charged with habitual criminality due to his past misdeeds. With the defendant facing the prospect of life imprisonment for habitual criminality upon conviction of the principal charge, section 16–13–101(2), C.R.S.1973

(1979 Supp.), fundamental fairness requires no less than strict bifurcation in these cases.

I am authorized to say that ERICKSON, J., joins me in this concurring and special concurring opinion.

HODGES, Chief Justice, dissenting:

I respectfully dissent and firmly disagree with the reversal of this defendant's conviction.

The majority holds that the defendant was unconstitutionally prevented from taking the witness stand in his own defense because the trial court did not properly advise the defendant with regard to the impact of certain provisions of the habitual criminal statute, section 16–13–101 *et seq.*, C.R.S.1973 (1978 Repl.Vol. 8). The majority reasons that the statute permits evidence of a defendant's prior felony convictions to be elicited from him by the prosecution for impeachment purposes and to then be used to satisfy the People's burden of proving the defendant's prior felony convictions for purposes of the habitual criminal charges. The majority concludes that this creates an intolerable tension between a defendant's twin rights to testify in his own defense and to have the prosecution prove beyond a reasonable doubt each element of the several charges against him. From my analysis of the habitual criminal statute, and particularly section 16–13–103, C.R.S.1973 (1978 Repl.Vol. 8), the majority misconceives the meaning and requirements of the statute.

Unless a defendant admits, either at arraignment or later, that he has been convicted of the prior felonies, the prosecution must prove beyond a reasonable doubt that he has been so convicted as charged. *People v. Hill*, 182 Colo. 253, 512 P.2d 257 (1973); *Vigil v. People*, 196 Colo. 522, 587 P.2d 1196 (1978); *O'Day v. People*, 114 Colo. 373, 166 P.2d 789 (1946). At arraignment, a defendant must either admit or deny that he has previously been convicted of the crimes identified in the information or indictment.[1] Section 16–13–103(3), C.R.S. 1973 (1978 Repl.Vol. 8). If the defendant

admits the he has been convicted as alleged, no further proof thereof is required. Section 16–13–103(3). *People v. Litsey*, 192 Colo. 19, 555 P.2d 974 (1976). If the defendant denies that he has previously been convicted as alleged, the jury impaneled to try the substantive offense charged shall also by a separate verdict determine whether the defendant has been convicted as alleged. Section 16–13–103(4). It is only after the jury has determined that the defendant is guilty of the substantive offense that the jury shall " * * * proceed to try the issues as to whether the defendant has been previously convicted as charged. The prosecuting attorney has the burden of proving beyond a reasonable doubt that the defendant has been convicted as charged." Section 16–13–103(4)(b). *See also Vigil v. People, supra.*

If the defendant takes the witness stand in his own defense, he may be impeached by evidence of his prior felony convictions. Section 13–90–101, C.R.S.1973. If a defendant takes the stand and denies during the trial of the substantive offense that he has been convicted as alleged, the prosecution on rebuttal must then present all evidence relevant to the defendant's prior felony convictions. Such evidence serves not only for impeachment purposes but also for sentence enhancement. Section 16–13–103(5). This section provides that "if the defendant is found guilty of the substantive offense" the jury will thereupon return verdicts on all issues relating to previous convictions.

The obvious import of this section is that, until the jury deliberates solely on the substantive offense and returns a verdict of guilty, it is not to be informed of the habitual criminal charges. Only after it returns this verdict on the substantive offense may the jury be instructed on the issues relating to the habitual criminal charges. To advise the jury in any way that habitual criminal charges are also pending before the trial has been completed and the jury has returned its verdict on the substantive offense would certainly constitute reversible error. Had this occurred in the present

---

1. If the defendant stands mute, it is treated as a denial. Section 16–13–103(3).

case, the defendant's conviction should be reversed. This did not occur.

The trial court correctly interpreted this section and ruled after the prosecution rested that whether or not this defendant took the stand he would be afforded a bifurcated proceeding. The defendant, nevertheless, did not choose to take the stand during the trial of the substantive charges.

If the defendant admits at arraignment that he has been convicted as alleged in any one or more of the counts charging previous convictions, then no further proof need be presented. Section 16–13–103(3). Implicit in this statutory scheme is the corollary that if the defendant admits on the witness stand that he has been previously convicted the prosecution is also relieved of introducing additional proof of the convictions. *Vigil v. People, supra; Hackett v. Tinsley*, 143 Colo. 203, 352 P.2d 799 (1960), *cert. denied*, 364 U.S. 874, 81 S.Ct. 118, 5 L.Ed.2d 96 (1960). *See generally* IX *Wigmore, Evidence* § 2588 *et seq.* (1940). The jury may consider such admissions when the habitual criminal issues are before it for determination. Of course, the prosecution is not precluded from presenting additional evidence in support of the habitual criminal conviction allegations.

It is important to note that the defendant attacked the constitutionality of that portion of the habitual criminal statute which he claims collapses the bifurcated trial into one proceeding if the defendant takes the witness stand during the first proceeding and his prior felony convictions—which are the basis for the habitual criminal charges—are exposed to the jury. Sections 16–13–103(1) and (5). The defendant asserts that the exposure of his prior felony convictions unduly prejudices a defendant with respect to the main charges and that this then creates an added unconstitutional chilling effect on his right to testify. Because of the statutory procedure which the court advised the defendant it would follow in this case had the defendant taken the stand, this argument has no merit. As stated previously, section 16–13–103(5) must be interpreted to require a bifurcated proce-

dure. The potential prejudice to a defendant is not in any way increased beyond that resulting from the use of prior felony convictions for impeachment purposes. When a defendant takes the witness stand in his own defense, regardless of whether habitual criminal charges are pending, the People are free to question him with regard to his prior felony convictions for impeachment purposes. Section 13–90–101, C.R.S.1973. An appropriate cautionary instruction should always be given to the jury. *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959). This procedure has been statutorily authorized and consistently upheld by this court in the face of numerous constitutional challenges over the years. *E. g., People v. Layton*, Colo., 612 P.2d 83 (1980).

The majority opinion in effect is advancing a new and novel rule of law that a judicial admission by a defendant that he has been previously convicted cannot be considered as proof of that fact by the jury before whom the issue is being tried; and that the prosecution must, in effect, reprove the fact already admitted. In my view, this requirement is without reason, logic, or judicial precedent, and serves no valid procedural purpose.

In sum, the defendant's contention, that the application of the statute unconstitutionally burdened his right to testify, simply has no merit under the trial court's ruling in this case, which was carefully formulated so as to protect the defendant from any fundamental unfairness, and was thoroughly explained to the defendant before he made his decision not to testify.

I would affirm the defendant's conviction.

I am authorized to say that LEE and ROVIRA, JJ., join me in the dissent.

LEE, Justice, dissenting.

I join in the dissent of HODGES, C. J.

In my view, no valid reason has been advanced why the conviction in this case should be overturned.

Preliminarily, it should be noted that the defendant's guilt was overwhelmingly es-

tablished. The defendant was observed by five officers breaking and entering into the house which he was accused of burglarizing. He was captured as he left by the rear door, attempting to avoid capture by the arresting officers. The conviction should not be reversed unless substantial prejudicial error occurred in the trial. None has been demonstrated in my view.

I concur in the Chief Justice's exposition of the procedural requirements under the habitual criminal statute. The trial judge's ruling, in my view, conformed with such requirements. The record of the colloquy between defendant, his counsel, and the court clearly indicates that the court's ruling fully protected the defendant's right to a fair trial on the substantive offense. There is nothing in the record to indicate that the trial jury had any knowledge whatsoever of the pending habitual criminal charges. It is apparent that throughout the prosecution's case no mention had been made to the jury of those charges or of the defendant's prior criminal record.

At the conclusion of the prosecution's evidence, the court advised the defendant that it would bifurcate the trial of the habitual criminal charges from the trial of the substantive offense. It further advised the defendant that if he took the stand to testify in his own behalf evidence of the prior convictions would be admissible for the purposes of impeachment only during the substantive trial. This conformed to defense counsel's understanding as to the procedural requirements. The record shows that, after so being advised by the court, the defendant consulted with his counsel. Thereafter, he indicated to the court that he understood the consequences of testifying and being cross-examined concerning his prior convictions. He then elected not to testify in his own defense.

An important consideration is the concept that the Habitual Criminal Act does not create a substantive crime. *Casias v. People*, 148 Colo. 544, 367 P.2d 327 (1961), cert. denied, 369 U.S. 862, 82 S.Ct. 952, 8 L.Ed.2d 20 (1963); *Wright v. People*, 116 Colo. 306, 181 P.2d 447 (1947). The Act only pre-

scribes circumstances where one found guilty of a specific substantive offense shall be more severely penalized if he has been previously convicted of crimes. As a sentence enhancement statute, the process concerns only the historical fact of the defendant's previous convictions.

The burden of proving that fact beyond a reasonable doubt is upon the prosecution. Section 16–13–103(4)(b), C.R.S.1973 (1978 Repl.Vol. 8). This may be established by testimony, documentary evidence, section 16–13–102, or by a judicial admission, either at arraignment or in testimony, section 16–13–103(3), (4), and (5).

The significant underlying consideration in pursuing the determination of habitual criminality is the formulation of a procedure which guards against the jury trying the substantive offense from being improperly exposed to the knowledge of the existence of the habitual counts or of evidence of the prior convictions before that jury has determined the issue of the defendant's guilt of the substantive offense. Fundamental fairness and due process mandate that a defendant only be convicted on evidence relevant to the offense of which he is accused and being tried. Evidence of prior convictions is not relevant to prove guilt except in very limited circumstances. *People v. Honey*, Colo., 596 P.2d 751 (1979); *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959).

In the present case, the procedures which the court ruled it would follow afforded the defendant the protection that he could only be convicted of the substantive offense upon evidence properly admitted. Of course, if the defendant elected to testify, the impeachment evidence based on his prior convictions—the same evidence which formed the basis of the habitual counts— could properly be admitted. Section 13–90–101, C.R.S.1973.

Initially, the defendant must elect whether he will subject himself on cross-examination to exposure of his prior criminal convictions by testifying in his own behalf at his trial on the substantive offense. This hard decision is created by his own prior criminal

conduct since under the long-established rule of evidence prior criminal convictions are held to bear upon the credibility of the witness. If he elects to testify and admit those facts, simply because they bear only upon his credibility in no way diminishes their character as judicial admissions of the historic fact of prior convictions. Because the court here ruled that the guilt trial should be totally separated from the habitual criminal proceedings, and since the use of the judicial admissions would not occur until after a jury verdict of guilty at the trial of the substantive offense, the use of the judicial admissions in aid of proof of the habitual counts could in no way offend due process or the fundamental fairness required at trial. Such judicial admissions are no less competent to prove the facts admitted than are admissions of the habitual counts at arraignment, or if obtained in any other separate judicial proceeding.

In my view, the ban of the use of the habitual proceeding of impeachment evidence of prior convictions admitted by a defendant while testifying as a witness in his own behalf does not afford a defendant any additional protection against unjustly being convicted on inadmissible evidence at the substantive trial.

The majority has applied the rationale of *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) to reach the conclusion that the trial court erred in ruling that, if the defendant elected to testify at the guilt trial, any admissions resulting from cross-examination as to prior convictions would be admissible as evidence at the habitual criminal proceeding to establish the fact of the prior convictions. The majority has concluded that, if such evidence were admissible to prove the historical fact of prior convictions, an "intolerable tension" between two constitutional rights would be created, resulting in a forced waiver of one of those rights: either the defendant must give up his constitutional right to testify, or give up his right to have the prosecution prove beyond a reasonable doubt that the defendant had previously been convicted as alleged in the habitual criminal counts.

In my view, the "intolerable tension" doctrine of *Simmons* has no application to this case. In *Simmons* the tension created related to two constitutional rights involved at a critical state of the substantive case. We do not have that situation here. Our concern is with the use of evidence lawfully admitted in the guilt trial for impeachment purposes, which also proves the historical fact of prior convictions at the sentence enhancement proceedings.

The assertion that the burden of proving beyond a reasonable doubt the fact of prior convictions at a sentence enhancement proceeding is a constitutional right is in my view a faulty concept. Sentence enhancement proceedings were unknown at common law and are of statutory origin. *Smalley v. People,* 116 Colo. 598, 183 P.2d 558 (1947). The statute does not create a new or independent crime but merely provides that in sentencing a defendant after conviction the court must consider former convictions and impose a more severe sentence. *Casias v. People, supra.* Since the sentence enhancement proceedings are of a statutory origin, the General Assembly could have established a lesser burden of proof upon the prosecution had it chosen to do so. This is borne out by the decision in *United States v. Inendino,* 463 F.Supp. 252 (N.D. Ill.1978), *aff'd* 604 F.2d 458 (7th Cir. 1979), *cert. denied,* 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 190 (1979).

In *Inendino* the court was concerned with the constitutional validity of 18 U.S.C. § 3575, the "dangerous special offender" statute, a sentence enhancement statute. The attack on the statute related to the constitutional validity of the burden of proof standard prescribed by Congress, that of "preponderance of the information." The court upheld that standard in face of the constitutional attack. The court noted that the United States Supreme Court has drawn a fine line between pre-conviction and post-conviction proceedings, and has approved post-conviction proceedings which provide less than the full panoply of trial rights. *See generally Williams v. New*

*York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *United States v. Stewart*, 531 F.2d 326 (6th Cir. 1976). In commenting on the due process rights in such proceedings, the Court stated:

> "However, in recognition of the fact that these procedures may result in a substantial deprivation of liberty, the Court has held that the defendant is entitled to representation of counsel, *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954), and to notice and opportunity to be heard, *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Although the exact dimensions of these rights have not been fully articulated, courts have held that they do not include the right to trial by jury, *see Turnbough v. Wyrick*, 551 F.2d 202 (8th Cir. 1977); *James v. Twomey*, 466 F.2d 718 (7th Cir. 1972), nor the right to grand jury indictment, *United States v. Baca*, 451 F.2d 1112 (10th Cir. 1971); *see also Beland v. United States*, 128 F.2d 795 (5th Cir.), *cert. denied*, 317 U.S. 676, 63 S.Ct. 157, 87 L.Ed. 543, *reh'g denied* 317 U.S. 710, 63 S.Ct. 205, 87 L.Ed. 566 (1942)." *United States v. Inendino, supra.*

In affirming the district court, the United States Court of Appeals for the Seventh Circuit stated:

> "The defendant contends that Section 3575 is constitutionally infirm because the statute authorizes findings of fact 'by [the] preponderance of the information,' rather than by the constitutionally mandated standard of beyond a reasonable doubt. *This section, however, does not create a separate criminal charge but instead provides for the enhancement of the penalty for the defendant's criminal conviction.* Also, the courts of appeals have uniformly found that the proof of dangerousness by a preponderance of the information is constitutional. *United States v. Williamson*, 567 F.2d 610 (4th Cir. 1977); *United States v. Bowdach*, 561 F.2d 1160 (5th Cir. 1977); *United States v. Stewart*, 531 F.2d 326 (6th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976). *See generally United States v. Neary*, 552 F.2d 1184 (7th Cir.), *cert. denied*, 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977)." (Emphasis added.) *United States v. Inendino*, 604 F.2d 458 (7th Cir. 1979), *cert. denied*, 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 190 (1979).

The treatment of the federal sentence enhancement statute, 18 U.S.C. § 3575,[1] by the federal courts clearly demonstrates that the constitutional right of a defendant to have the prosecution prove the elements of a crime beyond a reasonable doubt does not apply to post-conviction proceedings such as sentence enhancement hearings. Thus, it is clear that the standard of proof at the post-conviction sentence enhancement proceeding is statutory and does not rise to the constitutional level attributed to it by the majority opinion. For this reason, I do not believe that the procedure set down by the trial court in this case creates an "intolerable tension" between *two constitutional rights*, and the *Simmons* rationale is misapplied to the posture of the present case.

The purported burden—the chill—if any, on the defendant's constitutional right to

---

1. It is interesting to note that the federal statute provides that the burden of proof for enhancement purposes by the preponderance of the information may include information gained at trial on the substantive offense. 18 U.S.C. § 3575(b) provides:

"* * * In connection with the hearing, the defendant and the United States shall be entitled to assistance of counsel, compulsory process, and cross-examination of such witnesses as appear at the hearing. *A duly authenticated copy of a former judgment or commitment shall be prima facie evidence of such former judgment or commitment. If it appears by a preponderance of the information, including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender,* the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony. Otherwise it shall sentence the defendant in accordance with the law prescribing penalties for such felony. * * *"* (Emphasis added.)

testify did not, in my opinion, arise from any ruling of the trial court in formulating the guidelines for proceeding under the habitual criminal statute or from the announced procedures to be followed, but rather was the result of defendant's own predicament arising from his past lawless conduct, a consequence which every citizen who chooses to engage in such activity ought to anticipate.

The procedures formulated by the trial court conformed to the requirements of due process. The defendant was afforded a separate hearing on the habitual criminal charges with the burden of proof beyond a reasonable doubt placed upon the prosecution. He could be present with counsel, have the opportunity to be heard, to confront the witnesses against him, to cross-examine them, to offer evidence in his own behalf, and to have the findings of the prior convictions made by a jury. This procedure clearly afforded the defendant more protection than the minimums required by *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967).

The conviction should be affirmed.

I am authorized to say that HODGES, C. J., and ROVIRA, J., join in this dissenting opinion.