The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Dennis Eugene MASON, Defendant-Appellant.

No. 81SA48.

Supreme Court of Colorado, En Banc.

April 5, 1982.

Rehearing Denied April 26, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Suzanne Saunders, Elizabeth A. Joyce, Deputy State Public Defenders, Denver, for defendant-appellant.

QUINN, Justice.

The defendant, Dennis Eugene Mason, appeals his conviction of fraud by check, section 18–5–205, C.R.S.1973 (1978 Repl.Vol. 8), and his adjudication and punishment as a habitual criminal, section 16–13–101(1), C.R.S.1973 (1981 Supp.). He challenges his conviction of fraud by check on the grounds that the trial court erred in admitting similar transaction evidence, that the court failed to instruct the jury on the definition of "knowing" as an element of fraud by check, and that the prosecutor made prejudicial comments during his summation to the jury. The defendant also claims that the non-bifurcated statutory scheme for the trial of habitual criminal charges, which existed at the time of the offense in question,[1] unduly burdens the constitutional

1. After our decision in *People v. Chavez,* Colo., 621 P.2d 1362 (1981), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), the habitual criminal statute was amended in 1981 Colo.Sess.Laws 1981, ch. 202, § 16–13–103 at 952, and now provides for a bifurcated trial before the same jury in all habitual criminal proceedings. Section 16–13–103, C.R.S.1973 (1981 Supp.), provides, in pertinent part:

"(1) If the allegation of previous convictions of other felony offenses is included in an indictment or information and if a verdict of guilty of the substantive offense with which the defendant is charged is returned, the court shall conduct a *separate sentencing hearing* to determine whether or not the defendant has suffered such previous felony convictions. As soon as practicable, the hearing shall be conducted by the trial court before the jury impaneled to try the substantive offense charged, except that, if trial by jury was waived or if the defendant pleaded guilty, the hearing shall be conducted before the trial court." (Emphasis added).

\* \* \* \* \* \*

"(4) If the defendant denies that he has been previously convicted as alleged in any count of any information or indictment, the jury impaneled to try the substantive offense charged shall determine by separate hearing and verdict whether the defendant has been convicted as alleged. The procedure in any case in which the defendant does not become a witness in his own behalf upon the trial of the substantive offense shall be as follows:

(a) The jury shall render a verdict upon the issue of the defendant's guilt or innocence of the substantive offense charged;

(b) If the verdict is that the defendant is guilty of the substantive offense charged, the same jury shall proceed to try the issues of whether the defendant has been previously convicted as alleged. The prosecuting attorney has the burden of proving beyond a reasonable doubt that the defendant has been previously convicted as alleged.

"(5)(a) If, upon the trial of the issues upon the substantive offense charged, the defendant testifies in his own defense and denies that he has been previously convicted as alleged, the prosecuting attorney on rebuttal, may present all evidence relevant to the issues of previous convictions for the sole purpose of impeachment of the defendant's credibility, subject to the rules governing admission of evidence at criminal trials.

(b) If, upon the trial of the issues upon the substantive offense charged, the defendant testifies in his own defense and, after having denied the previous conviction under subsection (3) of this section, admits that he has been previously convicted as alleged, the court shall instruct the jury in any sentencing hearing to consider any admissions of prior convictions elicited from the defendant in connection with his testimony on the substantive offense only as they affect his credibility. The court shall also instruct the jury in any sentencing hearing that the prosecution must meet its burden of proving beyond a reasonable doubt the defendant's prior convictions by evidence independent of the defendant's testimony."

right of an accused to testify in his own defense on the substantive charge. We affirm the defendant's conviction of fraud by check. However, resting our decision on the particular facts of this case, we reverse that part of the judgment relating to habitual criminality. We conclude that the trial court acted contrary to the statutory procedures mandated for the trial of habitual criminal counts when it adjudicated and sentenced the defendant as a habitual criminal without ever having submitted the habitual criminal counts to the jury.[2]

### I.

Count one of the information alleged that between January 30 and February 28, 1979, the defendant, with the intent to defraud, issued two or more checks within a 30-day period to Safeway Stores, Inc., in the amount of $200 or more, knowing that he had insufficient funds with the drawee bank. Section 18–5–205(2) and (3)(c), C.R. S.1973 (1978 Repl.Vol. 8).[3] Counts 2 and 3, the habitual criminal charges, alleged that the defendant was previously convicted of voluntary manslaughter in West Virginia on April 10, 1975, and larceny of an automo-

bile in Oklahoma on January 15, 1970. Section 16–13–103(2), C.R.S.1973 (1981 Supp.).[4] After entering a plea of not guilty to all counts the defendant filed a motion to prohibit the prosecution from eliciting his prior felony convictions on cross-examination in the event he elected to testify at trial in defense of the fraud by check charge. The court denied the motion and the case proceeded to trial.

The prosecution's evidence concerning the fraud by check charge related to three checks written by the defendant in January and February 1979 in the city of Colorado Springs. In January 1977 the defendant and John Puylara had formed a partnership, Mason and Associates, to perform roofing and siding work. The checks were written on the partnership account at the Bank of Fountain Valley in Security, Colorado. Puylara kept the books and records of the business until January 1979, when he turned them over to the defendant with a checking account balance of approximately $100.

On January 26, 1979, the bank sent a written notice to Mason and Associates that

---

2. Our disposition renders moot the following issues raised by the defendant: the then existing statutory differences in trial procedures for habitual criminal counts between defendants who elect to testify in defense of the substantive charges, section 16–13–103(5), C.R.S.1973 (1978 Repl.Vol. 8), and defendants who elect not to testify, section 16–13–103(4), C.R.S.1973 (1978 Repl.Vol. 8), violate equal protection of the laws; and the sentence of 25–30 years which the court separately imposed on the habitual criminal counts was illegal because it should have been imposed as an enhanced penalty for the substantive charge of fraud by check.

The defendant also claims that the court erred in ordering him to pay restitution in the amount of $893.50 from his prison earnings. The attorney general has confessed error in this respect and suggests that the appropriate remedy is a correction of the mittimus. We believe this matter should be called to the attention of the sentencing judge by a motion for correction of the judgment, sentence and mittimus and we do not address it further in this opinion.

3. At the time of the commission of the offense section 18–5–205(2), C.R.S.1973 (1978 Repl. Vol. 8), provided:

"Any person, knowing he has insufficient funds with the drawee, who, with intent to

defraud, issues a check for the payment of services, wages, salary, commissions, labor, rent, money, property, or other thing of value, commits fraud by check."

Issuing a fraudulent check for the sum of two hundred dollars or more, or issuing two or more checks within a thirty-day period totalling two hundred dollars or more in the aggregate, is a class 4 felony. Section 18–5–205(3)(c), C.R.S.1973 (1978 Repl.Vol. 8). The fraud by check statute has since been amended in several particulars. *See* section 18–5–205, C.R.S. 1973 (1981 Supp.).

4. At the time of the offense section 16–13–103(2), C.R.S.1973 (1978 Repl.Vol. 8), provided:

"(2) An information or indictment seeking the increased penalties authorized by section 16–13–101 shall identify by separate counts each alleged former conviction, and it shall be alleged therein that the defendant at a time and place specified was convicted of a specific felony. If any such conviction was had outside the state of Colorado, it shall be alleged that the offense, if committed in Colorado, would be a felony."

*See* 16–13–103(2), C.R.S.1973 (1981 Supp.), for the 1981 amendment to this section.

its account was closed due to a deficit balance of $117.56. On January 30, 1979, the defendant wrote a "payroll" check for $293.50 to one of his employees, Greg Domijan, who then cashed it at a Safeway store.[5] Domijan returned $193.50 to the defendant and kept $100 as payment for furniture he had sold to the defendant. On the afternoon of February 2, 1979, the defendant wrote a check for $300 to the same Safeway store where the first check had been cashed. A cashier at the store, Jane Moberly, had been living with the defendant at this time and on the morning of February 2 had issued a Safeway check cashing card to the defendant. Moberly approved the $300 check for payment and gave the defendant $300 from Safeway funds. Both the January 30 check and the February 2 check were dishonored by the drawee bank and returned to Safeway with the notation "account closed." Upon being confronted by Jane Moberly about the unpaid checks, the defendant told her that he would transfer funds from his savings account to the checking account in order to cover the check. The defendant, however, had no savings account at the Bank of Fountain Valley. On February 5, 1979, the defendant wrote another check in blank, allegedly for "labor," and gave it to Greg Domijan who again cashed it at the same Safeway Store. Domijan returned $275 to the defendant and kept $25 for himself. This last check also was dishonored by the bank and returned to Safeway. The defendant was arrested on February 28, 1979, for fraud by check. After a *Miranda* advisement the defendant stated that he wrote the checks but believed that his partner had made a deposit to cover the checks from money located in the glove compartment of the defendant's automobile.

Over the defendant's objection the court admitted similar transaction evidence from several witnesses who described five other checks written by the defendant between January 24 and February 10, 1979. These checks totalled more than $900 and were returned unpaid with the notation "account closed." In admitting this evidence the court instructed the jury that it was to be considered only for the limited purpose of showing plan, scheme, design and motive.

At the conclusion of the prosecution's case the defendant renewed his motion to prohibit the prosecution from examining him on his prior felony convictions in the event he elected to testify. The court denied the motion. The defendant testified and admitted on direct examination his two prior felony convictions. His defense consisted essentially of his alleged lack of knowledge that there were insufficient funds in the account when he wrote the checks. He also testified that in early February 1979 he gave his partner, John Puylara, $650 for deposit in the account and that he anticipated substantial income from various jobs. This testimony was refuted by various prosecution witnesses.

At the conclusion of the evidence the court instructed the jury, in pertinent part, that the elements of fraud by check are:

"(1) with specific intent to defraud,

(2) defendant issues two or more checks within a 30-day period in the State of Colorado totalling in the aggregate $200 or more,

(3) knowing that he has insufficient funds with the drawee to pay the checks."

In a separate instruction the jury was informed that:

"Specific intent is a state of mind voluntarily and willfully to do or perform an act which will effect a certain result. Such an act must not be the result of accident or other innocent reason. The Defendant's conscious object must be to cause a certain result."

Consistent with the defendant's theory of the case, which was a lack of specific intent to defraud, the court instructed the jury

---

**5.** Domijan testified at trial that the check was written by the defendant at Amigo's Lounge, which is about a block and a half away from the Safeway Store where Domijan cashed the check. Domijan had a check cashing card for payroll checks and suggested to the defendant that the check could be cashed at Safeway.

that if it found the defendant reasonably believed there were sufficient funds in his account at the time the checks were presented for payment, then it must find him not guilty. Although the term "knowing" was not defined in any of the instructions, the defendant neither tendered an instruction on "knowing" nor objected to any of the instructions given by the court. No instructions or verdicts were submitted to the jury on the habitual criminal counts.

During a rather lengthy summation the prosecutor discussed the various instructions submitted to the jury and, in contrasting the defendant's extrajudicial statements with his trial testimony, the prosecutor made passing references to him as a "con man." Defense counsel made no contemporaneous objection to these remarks. Upon the return of a guilty verdict to fraud by check, the court discharged the jury from further service in the case. The court then entered a finding that the defendant admitted during his trial testimony the two prior felony convictions on which the habitual criminal counts were based and adjudicated him a habitual criminal.[6] After denying the defendant's motion for a new trial,[7] the court imposed a sentence of 4 to 10 years for fraud by check and a concurrent sentence of 25 to 28 years under the habitual criminal act.

We will first consider the defendant's claims relating to his fraud by check conviction and then the validity of his adjudication and sentence as a habitual criminal.

## II.

### A.

The defendant raises three arguments relating to the similar transaction evidence admitted during the trial: the alleged irrelevancy of this evidence; a claim of insufficient foundation for the admission of one of the similar transaction checks; and an assertion that the trial court improperly instructed the jury on the similar transaction evidence.

■ With respect to the defendant's claim of irrelevancy, there is no dispute that as a general rule evidence of other criminal acts is inadmissible because of its prejudicial effect. *See, e.g., People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979). However, a limited and well-defined exception is recognized in those situations where a similar act tends to establish the defendant's criminal culpability for the crime charged by showing that it was part of a continuing scheme and, hence, not the result of a mistake. *See, e.g., People v. Christian*, Colo., 632 P.2d 1031 (1981); *Van Pelt v. People*, 173 Colo. 201, 476 P.2d 999 (1970). In this case three of the five similar transaction checks were written within the time frame encompassed by count one of the information and two others were written just six days before that period of time. All the checks were drawn on the same account and

6. During the settlement of jury instructions the court announced that it was not going to submit the habitual criminal counts to the jury but, instead, would only submit the fraud by check verdict. The court then stated that if a guilty verdict was returned on the fraud by check charge, the defendant would be sentenced under the habitual criminal statute. Although the court indicated that its procedure was contrary to the Court of Appeals decision in *People v. Trujillo*, 40 Colo.App. 220, 577 P.2d 297 (1977), it nevertheless believed that submission of the habitual criminal counts to the jury would be prejudicial to the defendant. There is nothing in the record indicating the defendant requested the court to adopt the procedure it employed. Other than the written judgment, the only other reference to the habitual criminal adjudication is the following excerpt from a minute order of October 23, 1979:

"Instructions to Jury & closing arguments. Jury retires in custody of two sworn bailiffs to consider their verdict. Verdict of Jury returned as follows: Guilty of Fraud by Check. Jury polled, at request of Def. Verdict entered. Final instruction & Jury discharged. Court finds that Def admitted to cts 2&3 Habitual Criminal, while on the witness stand. Cont to 11/16/79 [at] 10:00 a. m. for receipt of PSIR."

7. The only grounds included in the defendant's motion for a new trial were: the denial of the defendant's pretrial motion, renewed during the trial, to prohibit the prosecution from eliciting the defendant's prior felony convictions on cross-examination; the admission of similar transaction evidence; and the denial of the defendant's motion for judgment of acquittal.

were issued in situations not materially different from the facts underlying the principal charge. The similar transaction evidence was highly probative of the requisite *mens rea* for fraud by check and, in our view, its probative value far outweighed the danger of any unfair prejudice stemming from its admission. Under these circumstances we conclude that the trial court did not err in admitting the challenged evidence.

■ The defendant next argues that there was an insufficient foundation for the admission of a $20 similar transaction check because it was never established that he received any value for the check. We see no merit in this claim. The check was made payable to Essell Levin, who owned a bar where the defendant issued the check. She positively identified the defendant as the issuer of the check and, after endorsing the check for deposit to her business account, received the check back with an "account closed" notation on it. Mrs. Levin further testified that the bartender cashed the check for the defendant. Thus, contrary to the defendant's argument, there was evidence that the defendant received value for the check. More importantly, the admission of this similar transaction evidence was not dependent on what the defendant might have received for the check but, rather, on the defendant's issuance of a check which was dishonored because of insufficient funds.

■ The defendant claims that the trial court improperly instructed the jury when the similar transaction evidence was admitted. His claim is based on certain references in the court's limiting instructions, which were given contemporaneously with the admission of the evidence, to the other

transactions as "offenses." [8] Although we agree the cautionary instructions were somewhat inartfully phrased and should have referred to the other check passing incidents as "transactions" or "acts," *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959), we do not believe the court's instructions constitute reversible error. The overall tenor of these instructions was such as to emphasize to the jury that the defendant was neither charged with nor on trial for these other acts and the admitted evidence was to be considered only on the issue of the requisite *mens rea* for the fraud by check charge. Besides, the defendant made no contemporaneous objection to the instructions nor did he raise the matter in his motion for a new trial. We cannot say the instructions so prejudiced the defendant's substantial rights during the trial as to amount to plain error under Crim.P. 52(b). *Gray v. People*, 139 Colo. 583, 342 P.2d 627 (1959).

■ The defendant also complains of the court's failure to submit to the jury a written instruction on similar transaction evidence at the conclusion of the evidence. We find no reversible error here. The court's written instructions included a general cautionary instruction that "evidence admitted for a limited purpose . . . could not be considered . . . for any purpose except the limited purpose for which it was admitted." The defendant not only agreed with this instruction, he also failed to tender any alternative directed to the similar transaction evidence, and lastly he made no complaint about the instructions in his motion for a new trial. We do not believe his appellate challenge involves a matter of plain error.

8. Typical of the court's limiting instructions were the following two, given on separate occasions during the trial:

"Ladies and gentlemen of the Jury, this evidence that you are hearing today is limited to special purpose, that is to show scheme, plan, design or motive. That is the only thing that you can consider, for that purpose only. This Defendant is not on trial for that. He cannot be tried for any offense that is not listed in the Information. This is not such an

offense, but it is restricted to scheme, plan, design or motive."

"Ladies and gentlemen of the Jury, the only purpose you can consider this evidence is for the purpose of showing plan, design or intent. The Defendant again can't be found guilty of anything he is not charged with. He is not charged with these offenses, only limited to the purposes of design, plan, scheme and intent."

### B.

The defendant argues that the court's failure to instruct the jury on "knowing" as used in the fraud by check statute constitutes reversible error. Here again, the defendant made no objection to the instruction and failed to tender a definition of "knowing." Although a defendant's knowledge of insufficient funds in the drawee bank is an essential element of fraud by check, we believe that when the instructions are read and considered in their entirety, the failure to define the term "knowing" does not amount to plain error.

■ The court instructed the jury that fraud by check required the culpable mental state of specific intent to defraud and, by separate instruction, defined specific intent so as to require a voluntary and willful state of mind to perform an act which will bring about a particular result, and as to exclude an act performed as the result of accident or other innocent reason. Also, with the defendant's express approval, the court instructed the jury that "[i]f you find that the Defendant had a reasonable belief that he would have sufficient funds in his account at the time the checks were presented for payment, you must find the Defendant not guilty." Under the instructions as given a juror could not reasonably conclude that the defendant could possess the specific intent to defraud, which is required for fraud by check, but at the same time be unaware of or mistaken about the adequacy of his checking account funds to pay the checks which he issued. Considering the plain import of the instructions given by the court, we are unable to conclude that the failure to define "knowing" so affected the substantial rights of the defendant as to amount to plain error. *See, e.g., Mattas v. People*, Colo., 645 P.2d 254 (1982); *People v. Crawford*, 183 Colo.

166, 515 P.2d 631 (1973); *Mathis v. People*, 167 Colo. 504, 448 P.2d 633 (1968).

### C.

■ We proceed to consider whether the prosecutor's references to the defendant as a "con man" in closing argument require a reversal of the defendant's conviction.[9] We have stated repeatedly that it is improper for a prosecutor to express his personal belief as to the guilt of the defendant. *E.g., People v. McGill*, 190 Colo. 443, 548 P.2d 600 (1976); *ABA Standards For Criminal Justice, The Prosecution Function*, Standard 3–5.8(b) (1980). Nor should a prosecutor use arguments calculated to appeal to prejudices or to mislead the jury in deciding the case. *E.g., People v. Walker*, 180 Colo. 184, 504 P.2d 1098 (1973); *ABA Standards For Criminal Justice, The Prosecution Function*, Standard 3–5.8(c) (1980). We emphasize here that the prosecutor's references to the defendant as a "con man" were improper and indicate either a misplaced zeal to win the case or an ignorance of the elemental principles of trial protocol. However, the defendant made no contemporaneous objection to these remarks nor did he raise them as error in his motion for a new trial. Under these circumstances we must measure the prosecutor's remarks against the plain error standard—that is, whether the impropriety was so grave as to endanger his right to a fair trial. *See, e.g., People v. Barker*, 180 Colo. 28, 501 P.2d 1041 (1972).

The improper remarks occurred when the prosecutor was contrasting the testimony of various prosecution witnesses, who had recounted statements made by the defendant to them in the course of his check writing activities, with the defendant's trial testi-

---

**9.** The defendant claims that one of the references to him as a "con man" was directed to his behavior during the trial when not on the witness stand. The prosecutor remarked in summation: "During this trial, he has been making eye contact and smiling and trying to give you a warm spot in your heart for him. Sure he has been. He's a con man." However,

notwithstanding the defendant's assertion, it is not improbable that the prosecutor might have been referring to the defendant's demeanor while on the witness stand. In any event, we do not believe the improper remarks under the circumstances of this case amount to plain error. *See Constant v. People*, Colo., 645 P.2d 843 (1982).

mony, in which he attributed the nonpayment of the checks to his own mistake about the status of his checking account. The inappropriate characterizations were few in number, momentary in length, and were a very small part of a rather prosaic summation. As the record indicates, defense counsel was not taken aback by the statements even to the point of voicing a contemporaneous objection or including the matter in his motion for a new trial. Without condoning the prosecutor's improper remarks, indeed with this registration of our strong disapproval of these comments, we nevertheless "cannot rule—as urged by the defendant—that his remarks so inflamed and impassioned the jury that it could not render a fair and impartial verdict." *People v. Elliston*, 181 Colo. 118, 126, 508 P.2d 379, 382–83 (1973); *see also, e.g., People v. Constant*, Colo., 645 P.2d 843 (1982); *People v. Ferrell*, Colo., 613 P.2d 324 (1980); *People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978); *People v. Plotner*, 188 Colo. 297, 534 P.2d 791 (1975); *People v. Simbolo*, 188 Colo. 49, 532 P.2d 962 (1975); *Cokley v. People*, 168 Colo. 52, 449 P.2d 824 (1969).

### III.

We turn to the defendant's claim directed to his adjudication and sentence as a habitual criminal. In *People v. Chavez*, Colo., 621 P.2d 1362 (1981), *cert. denied* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), we considered the issue whether in a trial involving habitual criminal counts the prosecution may use a defendant's admission of prior convictions, made during his testimony in defense of the substantive charge, as substantive proof of the habitual criminal

counts. We held that the prosecutorial use of such testimony as substantive proof of habitual criminality "unconstitutionally burdened [the defendant's] right to take the witness stand in his own defense." Colo., 621 P.2d at 1364. In the course of our opinion we noted that "it was not inappropriate for the trial court to 'bifurcate' the proceedings in this case," although the bifurcation itself "failed to cure the fundamental defect in the statutory scheme." Colo., 621 P.2d at 1366. Since the trial court had bifurcated the proceedings, the constitutional significance of a refusal to bifurcate simply was not before us. Therefore, our remarks in *Chavez* about bifurcation should be viewed in the context of the issue then under discussion, which was the substantive admissibility of the defendant's testimonial admission, and should not be interpreted as anything more.

In the instant case the defendant urges us to expand our holding in *Chavez* so as to require bifurcation, arguing that the non-bifurcated proceeding previously permitted by the habitual criminal statute impermissibly burdened his constitutional right to testify in his own defense of the substantive charge.[10] We, however, find it unnecessary to address his argument, as this case is more properly resolved on a different basis. The record here demonstrates that the trial court improperly terminated the defendant's trial on the habitual criminal counts by discharging the jury without ever having submitted or received a jury verdict on the habitual criminal counts. Under these circumstances the court's adjudication of the defendant as a habitual criminal was void and the sentence based on that adjudication was invalid.

10. In *Chavez*, we held that when a defendant expresses a desire to testify on his own behalf and requests a bifurcated proceeding, the trial court should "instruct the jury to consider any admissions of prior convictions elicited from the defendant in connection with his testimony on the substantive offense *only* as they affect his credibility," and "the prosecution must meet its burden of proving beyond a reasonable doubt the defendant's prior convictions by evidence independent of the defendant's testimony . . . ." Colo., 621 P.2d at 1367. These *Chavez* procedures, as well as a bifurcated trial, have been incorporated into the 1981 habitual criminal statute. *See* note 1, *supra.* The defendant's trial occurred prior to our decision in *Chavez* and, obviously, the procedures mandated in that case were not followed here. However, independent of any consideration of *Chavez*, the critical error here is the trial court's failure to submit the habitual criminal counts to the jury for verdict, in disregard of the procedure mandated by statute.

■ Section 16–13–103, C.R.S. 1973 (1978 Repl.Vol. 8), which was operative at the time of the defendant's trial, provided the following procedures for the trial of habitual criminal counts:

"(3) Upon arraignment of the defendant he shall be required to admit or deny that he has been convicted of a crime identified in the indictment or information. . . . If the defendant admits that he has been convicted as alleged in any one or more of the counts charging previous convictions, no proof thereof is required, and upon conviction of the substantive offense, the court shall pass sentence upon the defendant as an habitual criminal.

"(4) If the defendant denies that he has been previously convicted as alleged in any count of an information . . . the jury impaneled to try the substantive offense shall determine by separate verdict whether the defendant has been convicted as alleged."

The defendant in this case entered a not guilty plea to all counts, including the two counts alleging the prior convictions. Under section 16–13–103(4)(b), C.R.S.1973 (1978 Repl.Vol. 8), the prosecution bore the burden of proving his prior convictions at trial by proof beyond a reasonable doubt.

■ As this court stated in *Routa v. People*, 117 Colo. 564, 567, 192 P.2d 436, 438 (1948), when a defendant is arraigned and denies his prior convictions, then "it [is] incumbent upon the people to prove his identity and the previous convictions, and it [becomes] the statutory duty of the jury to 'find whether or not he or she has suffered such previous convictions.'" We have made reference to these requirements in several cases decided after *Routa*. *Mitchell v. People*, 137 Colo. 5, 320 P.2d 342 (1958); *Wolff v. People*, 123 Colo. 487, 230 P.2d 581 (1951); *see also People v. Trujillo*, 40 Colo. App. 220, 577 P.2d 297 (1977). There is nothing in these cases indicating that a defendant's trial admissions to prior convictions in the course of testimony given in defense of the substantive charge somehow dispenses with the statutory requirements that the prosecution prove the prior convictions beyond a reasonable doubt and that the jury determine by separate verdict "whether the defendant has been previously convicted as charged." Section 16–13–103(4)(b), C.R.S.1973 (1978 Repl.Vol. 8).

The trial court clearly was without authority to preempt the defendant's right to a jury trial on the habitual criminal counts solely on the basis of the defendant's testimony given in defense of the substantive charge. Likewise, there was no legal basis for the court *sua sponte* to adjudicate the defendant a habitual criminal because of his trial testimony. Such an adjudication is tantamount to violating the universal maxim that a guilty verdict may never be directed against the defendant in a criminal trial, even if he confesses to the charge while on the witness stand. *See, e.g., Mundy v. People*, 105 Colo. 547, 100 P.2d 584 (1940); *Rowan v. People*, 93 Colo. 473, 26 P.2d 1066 (1933).

We recently recognized that the trial of habitual criminal charges, in contrast to an ordinary sentencing hearing, must be conducted "in accordance with the same procedural and constitutional safeguards traditionally associated with a trial on guilt or innocence," including the constitutional protection against double jeopardy. *People v. Quintana*, Colo., 634 P.2d 413, 419 (1981). We must determine in this case whether, notwithstanding the erroneous preemption of the defendant's trial on the habitual criminal counts, he nevertheless may be retried consistently with double jeopardy principles. We are not dealing in this case with the existence of some manifest necessity requiring the declaration of a mistrial. *See Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). Moreover, there is no showing in the record that the defendant made a request of the court to change his formal denial of the prior convictions to a plea of admission, *cf. People v. Litsey*, 192 Colo. 19, 555 P.2d 974 (1976); nor does the record show the defendant ever requested the court to withdraw the habitual criminal counts from the jury. Further, the record shows neither a

waiver of the defendant's right to a jury trial and verdict on these counts nor any other action that might be construed as a waiver of his protection against double jeopardy. *Cf. Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). Rather, what the record shows are (1) a midtrial withdrawal of habitual criminal counts that should have been submitted to the jury for verdict, and (2) a post-trial determination of issues which by statute it was the jury's prerogative to resolve.

The court's action here closely resembles the court's *sua sponte* declaration of a mistrial in *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). There the Supreme Court held that, even though the trial judge's action might have been motivated by a desire to benefit the defendant, reprosecution is barred by the Double Jeopardy Clause in the absence of a manifest necessity for the termination:

"[W]e think that a limitation on the abuse-of-discretion principle based on an appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision. Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action."

\*    \*    \*    \*    \*    \*

"[W]here the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.' *See Wade v. Hunter*, 336 U.S. [684], at 689 [69 S.Ct. 834 at 837], 93 L.Ed. [974] at 978.

"If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. In the absence of such a motion, the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. *See United States v. Perez*, 9 Wheat [579], at 580, 6 L.Ed. [165] at 166." 400 U.S. at 483, 484–85, 91 S.Ct. at 556, 557, 27 L.Ed.2d at 555, 556–57.

We view the trial court's withdrawal of the prior conviction counts from the jury and its later discharge of the jury without a verdict ever having been returned on those counts as an improper termination of the defendant's trial on habitual criminality. If the court was concerned about avoiding prejudice to the defendant, it had available to itself the far less drastic alternative of submitting the habitual criminal counts to the jury under appropriate instructions only after the jury returned a guilty verdict to fraud by check. *See People v. Chavez, supra.* The course of action taken by the court deprived the defendant of his valued right to a jury verdict on the prior conviction counts by that particular jury impaneled and sworn to try the case. *See, e.g., Ortiz v. District Court*, Colo., 626 P.2d 642 (1981); *Espinoza v. District Court*, 180 Colo. 391, 506 P.2d 131 (1973); *Maes v. District Court*, 180 Colo. 169, 503 P.2d 621 (1972); *Barriner v. District Court*, 174 Colo. 447, 484 P.2d 774 (1971). Under these circumstances the constitutional protection against double jeopardy, *U.S.Const.* Amend. V; *Colo.Const.* Art. II, Sec. 18, prohibits the retrial of the defendant on the habitual criminal counts.

We affirm the judgment of conviction for the crime of fraud by check and reverse the defendant's adjudication and sentence as a habitual criminal.