James F. MOORE, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 83SC357.

Supreme Court of Colorado,
En Banc.

Oct. 15, 1985.

Rehearings Denied Nov. 12, 1985.

Specially Concurring Opinion
Nov. 12, 1985.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for respondent.

LOHR, Justice.

We granted certiorari to review the judgment of the Colorado Court of Appeals in *People v. Moore,* No. 82CA1342 (September 1, 1983) (not selected for official publication). In this case, the district court denied the defendant's motion for post-conviction relief by which he sought vacation of that part of his judgment of conviction determining that he had committed four prior felonies and therefore was an habitual criminal.[1] The court of appeals affirmed. In so doing, it held that the defendant was not entitled to relief from his adjudication as an habitual criminal even though the trial court found him guilty of the habitual criminal charges without submitting them to the jury for determination, a practice of which we disapproved in *People v. Mason,* 643 P.2d 745 (Colo.1982). The court of appeals based its holding on a factual distinction between *Mason* and this case. Although we do not agree that the factual differences between this case and *Mason* justify a different legal result, we decline to give retroactive effect to *Mason* so as to invalidate the defendant's adjudication and sentence as an habitual criminal. Accordingly, we affirm the judgment of the court of appeals.

I.

On December 4, 1975, an information was filed in the District Court for the City and County of Denver charging defendant James Franklin Moore with one count of unlawful possession of a narcotic drug for sale[2] and four counts collectively alleging that Moore had four prior felony convictions—the habitual criminal charges. Moore entered a plea of not guilty to all counts.

Trial was to a jury in June of 1976. During the prosecution's case-in-chief on the substantive possession for sale charge, a police officer testified that after Moore's

arrest for possession of a narcotic drug, Moore made an oral statement admitting the crime and stating that "he wanted to do whatever he could to help himself out on this case because he couldn't take a fall on a heroin case because he was a habitual criminal." Moore objected to the police officer's reference, in front of the jury, to Moore's purported admission that he was an habitual criminal, and moved for a mistrial. Moore's argument, as he more fully developed it later, was that he was forced to choose between testifying to explain his past or exercising his right not to testify with the result that the prejudicial remark would stand unexplained. The trial court denied the motion. Moore subsequently testified on his own behalf and admitted that he had been convicted of the four felonies that gave rise to the habitual criminal counts.

After the completion of the presentation of the evidence on the substantive offense, the following exchange took place between the trial court and Moore's attorney out of the presence of the jury:

THE COURT: All right. One other thing I think we should consider. That is, since there are habitual criminal counts pending here under 16–13–103, Subsection 3, it states: If the defendant admits that he has been convicted as alleged in any one or more of the counts charging previous convictions, no proof thereof is required; and upon conviction of the substantive offense, the Court shall pass sentence upon the defendant as a habitual criminal.

Then there is a case of *Hackett vs. Tinsley,* 143 Colo. 203, 352 P.2d 799, certiorari denied at 364 U.S. 874, 81 S.Ct. 118, 5 L.Ed.2d 96, which is a 1960 case that states that: In a prosecution under the habitual criminal section, prior convictions of felonies established by the

1. §§ 16–13–101 to –103, 8 C.R.S. (1973), now appearing as amended at §§ 16–13–101 to –103, 8 C.R.S. (1978 & 1984 Supp.).

2. At that time, section 12–22–322(1)(a), 5 C.R.S. (1973), made it a crime to possess unlawfully a

narcotic drug for sale. Article 22 of Title 12 was repealed and reenacted, and extensively revised in 1979, and has been further amended in the years since. *See* §§ 12–22–101 to –506, 5 C.R.S. (1984 Supp.).

admissions of the accused on the witness stand relieve the prosecution of the necessity of other proof thereof.

Since the defendant has stated from the witness stand that he has other prior convictions, Mr. DeVito [Moore's attorney], would you agree that it won't be necessary to have this jury then hear any evidence about his prior convictions and have a separate trial, if he is convicted, subsequent to the conviction on the present offense?

MR. DeVITO: I would agree that is my reading of the law. However, I would object to that procedure being utilized on the basis of, again, we had no alternative but to put the defendant on the stand. Again, at that particular time in the prosecution's case in chief, evidence as to his past felony record was improperly presented. Therefore, I do agree that to be the proceeding or the way the proceeding should go forth, but I would, for the record, object to the utilization of that proceeding here.

THE COURT: That is the only reason? Because of the information that came out about his prior felonies?

MR. DeVITO: Yes, your Honor.

THE COURT: Otherwise, you are not attacking the application of the statute; is that correct?

MR. DeVITO: I think that's the statute.

THE COURT: Anything else you feel should be added?

MR. STARK [the prosecutor]: No, your Honor.

THE COURT: Any other motions or anything else that should go on the record before we conclude the case?

MR. DeVITO: Nothing further.

MR. STARK: I have nothing.

The jury was instructed as to the possession for sale charge and returned a verdict of guilty. After the jury was discharged, the prosecutor tendered to the court certified copies of the four convictions alleged in the habitual criminal counts. Moore's attorney again agreed with the trial court that it was not necessary for the prosecution to put on any more evidence concerning the habitual criminal allegations because Moore had admitted his prior convictions on the witness stand. However, Moore's counsel renewed his earlier objection to the admission of evidence concerning Moore's habitual criminality in the prosecution's case-in-chief because, he argued, it improperly forced Moore to testify and admit the convictions. The trial court then made the following statement:

> The Court would make a finding then that these exhibits [the certified copies of Moore's convictions] will be admitted into evidence; that the defendant having taken the witness stand and admitted these four prior felonies that represent Counts 5, 6, 7 and 8, that there is no requirement that the People put on any evidence to the Court or to this same jury as provided by the statute, and the Court may sentence pursuant to the habitual criminal statute then without any further evidence being presented.

Pursuant to the requirements of the habitual criminal statute, Moore was sentenced to life imprisonment.[3]

Moore appealed his conviction, raising, among other things, the trial court's failure to grant a mistrial because of the allegedly improper reference to Moore's habitual criminality by the police officer during the trial. The court of appeals affirmed the conviction in an unpublished opinion. *People v. Moore*, Colo.App. No. 76–796 (July 7, 1977). In that appeal, Moore did not challenge the procedure utilized by the trial court in implementing the habitual criminal statute.

On September 8, 1981, Moore filed a motion for post-conviction relief pursuant to Crim.P. 35(c). Prior to the filing of the motion, this court held, in *People v. Chavez*, 621 P.2d 1362 (Colo.), *cert. denied*, 451

---

**3.** § 16–13–101(2), 8 C.R.S. (1973), now appearing as amended at § 16–13–101(2), 8 C.R.S. (1984 Supp.).

U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), that evidence of a defendant's prior convictions elicited from the defendant during trial on a substantive charge is not admissible for the purpose of proving habitual criminal charges against the defendant. Moore argued that *Chavez* should be applied retroactively to invalidate his adjudication as an habitual criminal. The district court denied Moore's motion for post-conviction relief, holding that *Chavez* was factually distinguishable and that *Chavez*, even if not distinguishable, would not be applied retroactively.

Moore appealed, arguing that his case was not distinguishable from *Chavez* in any legally significant respect and that *Chavez* should be given retroactive application. In his brief before the court of appeals, Moore also noted the decision of this court in *People v. Mason*, 643 P.2d 745 (Colo.1982), which was decided after Moore filed his motion for post-conviction relief. In *Mason*, we held that the habitual criminal statute guarantees to a defendant the right to a jury determination of the habitual criminal charges and that it is error for a trial court to refuse to submit habitual criminal charges to the jury even if the defendant admits his prior convictions while testifying during the trial on the substantive charge.

The court of appeals affirmed the denial of Moore's motion for post-conviction relief, holding that *Chavez* could not be applied retroactively to invalidate Moore's conviction and that the facts that were essential to our holding in *Mason* could be distinguished from the circumstances surrounding Moore's adjudication as an habitual criminal. *People v. Moore*, 82CA1342 (September 1, 1983) (not selected for official publication). We granted certiorari to review only the latter issue of the applicability of *Mason*, i.e., whether Moore should be afforded post-conviction relief because the trial court failed to submit Moore's habitual criminal counts to the jury for determination.

## II.

In *People v. Mason*, the defendant was charged with fraud by check and with two habitual criminal counts. 643 P.2d at 748. Prior to trial, and also at the conclusion of the prosecution's case, Mason moved to prohibit the prosecution from examining him on his prior felony convictions in the event he decided to testify concerning the substantive fraud by check charge. The district court denied the motions. Mason testified and admitted his two prior felony convictions during his direct examination. *Id.* at 749. Upon return of a guilty verdict to the fraud by check charge, the trial court discharged the jury, entered a finding that the defendant had admitted the two prior felony convictions during his trial testimony, and adjudicated him to be an habitual criminal. Mason was sentenced accordingly. *Id.* at 750. Mason did not object to the failure on the part of the trial court to submit the habitual criminal counts to the jury. Nor did Mason raise this issue in his motion for new trial or argue it on appeal in this court. *Id.* at 750, 750 n. 7, 753.

We declined, however, to address Mason's argument on appeal that *Chavez* should be applied to invalidate his adjudication and sentence as an habitual criminal, and instead held that the trial court improperly terminated the defendant's trial on the habitual criminal charges by discharging the jury without ever having submitted or received a jury verdict on those counts. *Id.* at 753. We noted first that section 16–13–103(4), 8 C.R.S. (1978), which was operative at the time of Mason's trial, required that the jury impaneled to try the substantive offense also determine by separate verdict whether the defendant had been convicted as alleged in the habitual criminal charges when those allegations had been denied by the defendant at the time of arraignment. We also noted that Mason had denied the habitual criminal allegations against him by pleading not guilty to all counts at arraignment, and that, despite admitting the prior convictions during the substantive phase of the trial, Mason had not withdrawn his formal denial of the prior convictions or entered a plea of guilty to the

habitual criminal allegations. *Id.* at 754. For these reasons, we held:

> The trial court clearly was without authority to preempt the defendant's right to a jury trial on the habitual criminal counts solely on the basis of the defendant's testimony given in defense of the substantive charge. Likewise, there was no legal basis for the court *sua sponte* to adjudicate the defendant a habitual criminal because of his trial testimony. Such an adjudication is tantamount to violating the universal maxim that a guilty verdict may never be directed against the defendant in a criminal trial, even if he confesses to the charge while on the witness stand.

*Id.* As a result, we reversed the defendant's adjudication and sentence as an habitual criminal. *Id.* at 755. We also held that the constitutional protections against double jeopardy prohibited retrial of the defendant on the habitual criminal charges. *Id.* at 754–55.

In the present case the prosecution argues, and the court of appeals agreed, that *Mason* is distinguishable because Moore's attorney verbally acquiesced in the trial court's decision to preempt the jury's consideration of the habitual criminal counts. Although this distinction exists, we conclude that it lacks legal significance.

■ We have recognized that the trial of habitual criminal charges, in contrast to an ordinary sentencing hearing, must be conducted "in accordance with the same procedural and constitutional safeguards traditionally associated with a trial on guilt or innocence." *People v. Quintana*, 634 P.2d 413, 419 (Colo.1981) (holding that constitutional protections against double jeopardy apply to a defendant prosecuted as an habitual criminal). *See also People v. Chavez*, 621 P.2d at 1365–67 (recognizing defendant's constitutional right to have the prosecution prove the elements of habitual criminality). *Cf. People ex rel. Faulk v. District Court*, 673 P.2d 998 (Colo.1983) (same-jury requirement of habitual criminal statute does not violate defendant's constitutional right to an impartial jury; as part

of the analysis of the statute, we stated that "constitutional safeguards are built into the bifurcated system," *id.* at 1000). We repeated the above-quoted statement from *Quintana* in *Mason* when deciding that the protections against double jeopardy precluded the retrial of Mason on the habitual criminal charges. 643 P.2d at 754. We also noted that the "record shows neither a waiver of the defendant's right to a jury trial and verdict on these counts nor any other action that might be construed as a waiver of his protection against double jeopardy." *Id.* at 754–55.

■ Because of the special nature of the habitual criminal adjudication process as articulated in these decisions, we conclude that any waiver of the jury trial guaranteed in habitual criminal adjudications must be governed by the same constitutional principles associated with a waiver of the right to a jury trial on felony criminal charges. Section 18–1–406(2), 8 C.R.S. (1978), and Crim.P. 23(a)(5) provide that a person accused of a felony lower than class 1 may waive his constitutional right to a jury trial. Any such waiver, however, must be made personally by the defendant, *Rice v. People*, 193 Colo. 270, 271–72, 565 P.2d 940, 941–42 (1977), must be understandingly, voluntarily and deliberately made, *see People v. Fowler*, 183 Colo. 300, 304, 516 P.2d 428, 429–30 (1973), and must be a matter of certainty, not implication, *Rice v. People*, 193 Colo. at 272, 565 P.2d at 941. *See also People v. Curtis*, 681 P.2d 504, 511, 515 n. 16 (Colo.1984).

■ It is apparent from the portions of the record quoted in part I of this opinion that Moore's acceptance of the trial court's decision not to submit the habitual criminal charges to the jury does not satisfy these waiver requirements, if for no other reason than because the "waiver" was not personally made by the defendant Moore but by his attorney. *See Rice v. People.* Nor can it be determined from the record that Moore waived his right to a jury trial on the habitual criminal allegations while possessed of a clear understanding of that right. For these reasons, the verbal acqui-

escence of Moore's attorney to the trial court's decision not to submit the habitual criminal counts to the jury did not operate as a waiver of Moore's right to a jury trial as recognized in *Mason*, and *Mason* is not distinguishable factually from this case in any legally significant way.

## III.

Moore was sentenced as an habitual criminal in 1976, six years before our decision in *Mason*. The People argue that *Mason* should not be applied retroactively to invalidate Moore's adjudication and sentence as an habitual criminal. Moore argues that *Mason* did not reverse or overrule any prior law, implicitly arguing that an issue of retroactivity is not present. In his brief before the court of appeals, Moore also argued that *Chavez* "and its progeny," which included *Mason*, must be applied retroactively to the extent that they have altered prior law. We agree with the position of the People.

## A.

Moore argues that *Mason* simply reaffirmed long-standing principles often applied by this court. It is true that in *Mason* we noted and relied upon several of our earlier decisions that held that when a defendant denies his prior convictions at arraignment, it is incumbent upon the prosecution to prove the convictions and it is the statutory duty of the jury to determine whether the defendant has suffered the previous convictions as alleged. 643 P.2d at 754. *See Routa v. People*, 117 Colo. 564, 567, 192 P.2d 436, 438 (1948). *See also Mitchell v. People*, 137 Colo. 5, 9–10, 320 P.2d 342, 345 (1958); *Wolff v. People*, 123 Colo. 487, 492–94, 230 P.2d 581, 583–85 (1951).

Not noted in *Mason*, however, was our decision in *Hackett v. Tinsley*, 143 Colo. 203, 352 P.2d 799, *cert. denied*, 364 U.S. 874, 81 S.Ct. 118, 5 L.Ed.2d 96 (1960), in which we held that when a defendant's prior felony convictions "were established by his admissions on the witness stand," the prosecution was relieved of the necessi-

ty of proving the convictions. 143 Colo. at 204–05, 352 P.2d at 800. As noted in part I of this opinion, *Hackett* was relied upon by the trial court as authority for its assertion that because Moore admitted his previous convictions while on the witness stand, the prosecution was relieved of the necessity of presenting further proof of these convictions, and it would not be necessary for the jury to hear evidence and make a determination as to the habitual criminal charges. A similar statement of the law, though not expressly traced to *Hackett*, was made in *People v. Litsey*, 192 Colo. 19, 25, 555 P.2d 974, 978 (1976) ("Once the defendant admitted that he had suffered the prior convictions as charged, the trial judge was empowered to sentence the defendant as an habitual offender following conviction on the substantive charge.").

Then, in *People v. Chavez*, which was decided five years after Moore was sentenced as an habitual criminal, we acknowledged that if Chavez had testified and admitted his prior felony convictions, the prosecution, on the basis of *Hackett*, would have been relieved of the necessity of proving the habitual criminal charges, 621 P.2d at 1365, and the admission would have led to the automatic imposition of a life sentence upon a finding by the jury of guilty on the substantive charge, *id.* at 1364. As our central holding in *Chavez*, we concluded that an admission by a defendant of prior felony convictions during trial on the substantive charge could not be used to prove habitual criminal charges, and we overruled all language in *Hackett* inconsistent with this holding. *See id.* at 1365 n. 4.

Finally, in *People v. Mason*, we held that the trial court improperly terminated the defendant's trial on the habitual criminal charges by discharging the jury without ever having submitted or received a jury verdict on the habitual criminal counts. 643 P.2d at 753. Our holding in *Mason* was, in part, implicitly mandated by our holding in *Chavez*. Because a defendant's admission of prior felony convictions on the witness stand during trial on the substantive charge could no longer be considered

proof of the habitual criminal charges, those charges remain unproven in that situation until the prosecution presents sufficient evidence to substantiate the charges beyond a reasonable doubt as determined by a jury. Our decision in *Chavez* to overrule inconsistent language in *Hackett* that allowed a defendant's admissions on the witness stand during the substantive trial to be used to prove habitual criminal charges left *Hackett's* accompanying notion—that those charges need not be submitted to the jury—fatally undermined.

A fair reading of *Hackett, Litsey, Chavez* and *Mason* mandates a conclusion that the procedure followed by the trial judge in this case, when choosing to sentence Moore as an habitual criminal without submitting the habitual criminal allegations to the jury because Moore admitted his prior convictions on the witness stand, was consistent with the relevant legal principles expressed and applied in *Hackett* and, subsequently, in *Litsey*. *Chavez* overruled or undermined the relevant portions of *Hackett* and *Litsey* without specific discussion of the issue of the right to a jury trial, and *Mason* completed the reformulation of the law in this area, although without specific reference to *Hackett*. For this reason, we must determine whether the new principle of law as finally and explicitly articulated in *Mason* should be applied retroactively to invalidate Moore's adjudication and sentence as an habitual criminal.

### B.

■ "The federal and state constitutions neither prohibit nor require retroactive application of a new constitutional rule." *People v. Walker*, 666 P.2d 113, 118 (Colo. 1983). The criteria to be used in deciding whether a new constitutional rule of criminal procedure should be applied retroactively are the purpose to be served by the new standards, the extent of the reliance by law enforcement authorities on the old standards, and the effect on the administration of justice of a retroactive application of the new standards. *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970,

18 L.Ed.2d 1199 (1967); *People v. Walker*, 666 P.2d at 117. In *Walker*, we quoted with approval and applied the following observation from *Adams v. Illinois*, 405 U.S. 278, 280, 92 S.Ct. 916, 918, 31 L.Ed.2d 202 (1972), concerning the retroactive application of new constitutional rules of criminal procedure:

> We have given complete retroactive effect to the new rule, regardless of good-faith reliance by law enforcement authorities or the degree of impact on the administration of justice, where the "major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials...." *Williams v. United States*, 401 U.S. 646, 653 [91 S.Ct. 1148, 1152, 28 L.Ed.2d 388] ... (1971).

666 P.2d at 117–18.

In *Walker*, we were required to determine whether *People v. Chavez* should be applied retroactively. We concluded that the new rule of criminal procedure announced in *Chavez* increased the reliability of the fact-finding process at trial. This was because under the previous rule, a defendant could not testify in his own defense on the substantive charge without risking admission of prior convictions and thereby incurring an automatic habitual criminal determination upon conviction of the substantive offense. This prior rule substantially impaired the truth-finding function because it discouraged the defendant from testifying and thereby deprived the jury of relevant evidence. 666 P.2d at 118. Despite this conclusion, we declined to accord complete retroactive effect to *Chavez*. We noted that *Chavez* overruled long-standing precedent, and that to grant complete retroactive effect to *Chavez* would have had an adverse impact on the administration of justice in Colorado because of the substantial number of defendants who "might seek post-conviction relief, even though their convictions had long been final" by the time *Chavez* was decided. *Id.* Thus, we held that *Chavez* should

be applied retroactively only in those cases in which

> (1) the defendant filed a motion to prohibit the prosecution from using his trial testimony as substantive evidence during the habitual criminal proceedings or otherwise properly preserved the issue in the trial court for appellate review, and (2) the judgment of conviction is not yet final on direct appeal.

*Id.*

■ The same considerations that militated against affording complete retroactive application to *Chavez* are also present here. *Mason* explicitly rejected a procedure for determination of habitual criminality that we had approved many years earlier in *Hackett v. Tinsley.* Granting retroactive effect to *Mason* for those defendants in the position of Moore likely would have an adverse impact on the administration of justice for the same reason that we found persuasive in *Walker*—the potentially great number of defendants who might seek post-conviction relief even though their convictions had long been final by the time *Mason* was decided. *See Walker,* 666 P.2d at 118.

■ Additionally, contrary to the circumstances in *Chavez,* the rule of criminal procedure announced in *Mason* will not increase significantly the reliability of the fact-finding process at trial, at least not when viewed in the light of the facts of this case. Here, before the adjudication of Moore as an habitual criminal, the prosecution tendered certified copies of the defendant's convictions to the court, and they were admitted into evidence. While, as we have since determined, Moore was entitled to receive a jury determination of the habitual criminal charges, it cannot be said that the reliability of the inquiry into the "truth" of Moore's convictions would have been significantly enhanced by the submission of this issue to the jury. For the same reason, we deem it unlikely that the truth-finding function in the habitual criminal

process in general will be enhanced by the rule adopted in *Mason.*

For the foregoing reasons, we conclude that giving retroactive effect to *Mason* would not be appropriate for those seeking post-conviction relief.[4] Accordingly, we decline to do so.

The judgment of the court of appeals is affirmed.

ROVIRA, Justice, specially concurring:

I concur in the opinion of the court. I write separately only to emphasize my understanding that nothing in the court's opinion suggests there is a constitutional requirement that a habitual criminal proceeding be tried before a jury. I believe that the right to a jury trial in such a proceeding is statutorily based.

The legislature has recognized that habitual criminal status warrants strict statutory procedures for its determination. In *People v. Quintana,* 634 P.2d 413, 419 (Colo.1981), we recognized that if constitutional type procedural safeguards attach to the statutory right to a jury trial in habitual criminal proceedings it is only because it was the "legislative intent to require that an adjudication of habitual criminality be made only in accordance with the same procedural and constitutional safeguards traditionally associated with a trial on guilt or innocence."

Determining whether a person is a habitual criminal is a sentencing proceeding. The constitutional right to a jury trial applies to trials on the issue of guilt or innocence. It does not apply to sentencing proceedings. *E.g., Spaziano v. Florida,* — U.S. ——, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) (neither sixth nor eighth, nor fourteenth amendments require jury sentencing in death penalty cases). Certainly, if there is no right to a jury in a capital sentencing case, there is no such right in a habitual criminal sentencing proceeding.

---

**4.** We do not decide today whether *Mason* should be applied retroactively in any case on direct appeal in which the judgment of conviction is not yet final. *See People v. Walker,* 666 P.2d at 118.